673 S.E.2d 804

**William F. DYKEMAN and Leslie L. Dykeman, on behalf of themselves and all others similarly situated, Appellants,**

**v.**

**WELLS FARGO HOME MORTGAGE, INC., Respondent.**

No. 26593.

Supreme Court of South Carolina.

Heard Oct. 22, 2008.

Decided Feb. 9, 2009.

Rehearing Denied March 18, 2009.

334

J. Olin McDougall, II, of Newman & McDougall, of Beaufort, Timothy E. Eble, of Mt. Pleasant, and Tom Young, Jr., Charles W. Whetstone, Jr., Cheryl F. Perkins, all of Whetstone, Myers, Perkins & Young, of Columbia, for Appellants.

Walter Keith Martens and Herbert W. Hamilton, both of Hamilton, Martens, Ballou & Sipe, of Rock Hill, for Respondent.

John T. Moore, C. Mitchell Brown, and B. Rush Smith, III, all of Nelson, Mullins, Riley & Scarborough, of Columbia, for Amicus Curiae South Carolina Bankers Association, and Robert R. Thuss and Susan B. Berkowitz, also of Columbia, for Amicus Curiae SC Appleseed Legal Justice Center.

Justice KITTREDGE:

This case involves the interpretation of penal statutes imposing a duty on the record holder of a mortgage on real estate to enter a satisfaction of the mortgage in the proper office, upon the occurrence of certain conditions. The sole condition before us relates to the requirement in sections 29–3–310 and 320 of the South Carolina Code (2007), that the mortgagor make a request to the mortgagee to enter the satisfaction. In this case, we must answer whether the mortgagor's compliance with the "borrower's responsibilities" set by the mortgagee constituted an affirmative request from the mortgagor. The circuit court answered in the negative and granted the mortgagee summary judgment. We affirm.

## I.

In June of 2000, William and Leslie Dykeman purchased property in Beaufort County, South Carolina by executing a purchase-money mortgage in favor of Wells Fargo. In February of 2002, the Dykemans refinanced the loan with Wells Fargo. Wells Fargo provided to the Dykemans' closing attorney certain documents which set forth the "borrower's responsibilities." These documents included a transmittal form, a payment coupon, and a complete payoff amount. Part of the payoff amount (five dollars) was a payment for "recording fees."

The Dykemans complied with the "borrower's responsibilities" by completing the forms and paying the amount submitted by Wells Fargo, including the five dollar recording fee. A check (for the payoff) was mailed to Wells Fargo on or about February 28, 2002. The record does not contain a cover letter from the Dykemans' counsel to Wells Fargo, as typically occurs as part of the real estate closing process.[1] In any event, Wells Fargo acknowledged receipt of the payment and documentation pursuant to the "borrower's responsibilities."

Wells Fargo did not record the mortgage satisfaction until July 16, 2002, by filing a lost mortgage satisfaction with the Beaufort County Register of Deeds. The record discloses that the Dykemans' closing attorney wrote Wells Fargo about a month earlier on June 27, 2002, specifically citing to sections 29–3–310 and 320 and noting that Wells Fargo "may already be liable for the statutory penalty." Because the mortgage satisfaction was not entered within three months after Wells Fargo's receipt of the mortgage payment and payoff fee, the Dykemans brought this statutory claim against Wells Fargo.[2]

---

1. Following a real estate refinancing, the standard cover letter from a closing attorney to the holder of the mortgage usually includes the payment due on the debt and any fee necessary to enter a satisfaction of the mortgage in the proper office. Such standard cover letters may include an affirmative request that the mortgagee cause a satisfaction to be entered of record. We recognize, however, that in some circumstances, the mortgagee may enlist the closing attorney to accomplish the task of ensuring that the mortgage satisfaction is properly entered. *See Kinard v. Fleet Real Estate Funding Corp.*, 319 S.C. 408, 410, 461 S.E.2d 833, 834 (Ct.App.1995).

2. This action was brought by the Dykemans "on behalf of themselves and those similarly situated."

Pursuant to cross-motions for summary judgment, the trial court granted judgment for Wells Fargo. The Dykemans appealed, which is before us pursuant to Rule 204(b), SCACR, certification.

## II.

We set forth the relevant statutory sections requiring the recording of a satisfaction. Section 29–3–310 provides:

*Any holder of record of a mortgage who has received full payment or satisfaction* or to whom a legal tender has been made of his debts, damages, costs, and charges secured by mortgage of real estate *shall, at the request by certified mail or other form of delivery with a proof of delivery of the mortgagor or of his legal representative* or any other person being a creditor of the debtor or a purchaser under him or having an interest in any estate bound by the mortgage and on tender of the fees of office for entering satisfaction, *within three months after the* certified mail, or other form of delivery, with a proof of delivery, *request is made, enter satisfaction in the proper office* on the mortgage which shall forever thereafter discharge and satisfy the mortgage.

(emphasis added).

Section 29–3–320 provides:

*Any holder of record of a mortgage having received such payment, satisfaction, or tender as aforesaid who shall not,* by himself or his attorney, *within three months after such* certified mail, or other form of delivery, with a proof of delivery, *request* and tender of fees of office, *repair to the proper office and enter satisfaction* as aforesaid *shall forfeit and pay to the person aggrieved a sum of money not exceeding one-half of the amount of the debt secured by the mortgage, or twenty-five thousand dollars, whichever is less, plus actual damages, costs, and attorney's fees in the discretion of the court,* to be recovered by action in any court of competent jurisdiction within the State.

(emphasis added).

Sections 29–3–310 and 320 are penal statutes. Penal statutes must be strictly construed. *Bostic v. Am. Home Mortg. Servicing, Inc.,* 375 S.C. 143, 149, 650 S.E.2d 479, 482

(Ct.App.2007) ("South Carolina has long recognized the principle that penal statutes are to be strictly construed."). The Court of Appeals in *Rorrer v. P.J. Club, Inc.,* 347 S.C. 560, 567, 556 S.E.2d 726, 730 (Ct.App.2001) expounded:

> The rule that penal statutes, as contradistinguished from remedial statutes, must be construed strictly, is but a means of arriving at the intention. When a law imposes a punishment which acts upon the offender alone, and not as a reparation to the party injured, and when it is entirely within the discretion of the lawgiver, it will not be presumed that he intended it should be extended further than is expressed; and humanity would require that it should be so limited in the construction as to be certain not to exceed the intention.

Further, the statute as a whole must be examined to determine and fulfill the Legislature's intent. *Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 468, 636 S.E.2d 598, 606–07 (2006) ("A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers.").

In *Bostic,* the Court of Appeals interpreted sections 29–3–310 and 320 to determine what constitutes a "request," sufficient to render the mortgagee statutorily liable. 375 S.C. at 154, 650 S.E.2d at 485. The facts in *Bostic* are similar to those before us. Bostic "obtained a statement [from the mortgagee] for the payoff amount on the loan, which ... included a 'release fee' and a 'recording fee.' " *Id.* at 145, 650 S.E.2d at 480. Bostic sent the funds to the mortgagee which acknowledged receipt, but the mortgage was not satisfied of record within the statutory three-month period. *Id.* Bostic, through counsel, then sent a certified letter to the mortgagee to two separate addresses. *Id.* The certified letter referenced the statute and demanded the statutory penalty. *Id.* at 145–46, 650 S.E.2d at 480.

Bostic filed suit against the mortgagee seeking the statutory penalty and related relief. *Id.* at 146, 650 S.E.2d at 480. The trial court granted Bostic summary judgment, but the Court of Appeals reversed. *Id.* at 144–45, 650 S.E.2d at 480. The Court of Appeals determined that under the applicable statutory scheme, as a matter of law, Bostic failed to make an

affirmative request to have his mortgage recorded as satisfied. *Id.* at 156, 650 S.E.2d at 486. The *Bostic* court interpreted the element of a request as a condition precedent to statutory relief. *Id.* at 150, 650 S.E.2d at 483. In this regard, sending the payoff check to the mortgagee did not constitute a "request" within the meaning of the statute. *Id.* at 155, 650 S.E.2d at 485.

We agree with the *Bostic* court's determination that our Legislature intended a request, under the penal statutory framework, "operate to inform the mortgagee of the mortgagor's desire for the satisfied mortgage to be recorded." *Id.* at 154, 650 S.E.2d at 485. For liability to attach under the applicable statutes, payment of the mortgage is "only the first step in the mortgage satisfaction process. In order for Bostic to recover the statutory penalty under section 29–3–320, he had to satisfy the condition precedent of making a 'request' for [the mortgagee] to record his mortgage as satisfied." *Id.* A request, to trigger the statutory penalty, may not be implied or inferred. *Id.* at 155, 650 S.E.2d at 486. The request must affirmatively convey to the mortgagee that a recording of the satisfaction is sought.[3] *Id.*

The Dykemans' claim under the applicable penal statutory framework similarly fails for lack of an affirmative request to have the mortgage recorded as satisfied. The Dykemans may have entertained a reasonable expectation that Wells Fargo would satisfy the mortgage of record following the payoff. That expectation, however, was unstated. Because of the windfall nature of the statutory penalty, we are persuaded the Legislature did not intend to invoke the statu-

---

**3.** *Bostic* additionally involved an allegation of telephone conversations between the parties shortly after the payoff check was mailed. *Id.* at 155, 650 S.E.2d at 485. It appears the record was scant in this regard, and the court declined to conclude for summary judgment purposes that these purported phone conversations be construed as a "request." *Id.* at 155–56, 650 S.E.2d at 485–86. In the case before us, the Dykemans rely exclusively on their compliance with the "borrower's responsibilities" document furnished by Wells Fargo. (As alleged in the Dykemans' second amended complaint, "[t]he payment and delivery of the $5.00 fee by [the Dykemans] ... pursuant to [Wells Fargo's] demand therefore as a condition to filing a satisfaction of mortgage constituted a request.") We therefore do not reach the question whether a verbal request could be sufficient.

tory penalty in the absence of a clear, affirmative request. The Court of Appeals spoke directly to this in *Kinard v. Fleet Real Estate Funding Corp.*, 319 S.C. 408, 412, 461 S.E.2d 833, 835 (Ct.App.1995). The court in *Kinard* described two statutory interpretation principles, in the context of the applicable statutory scheme, when it stated, "the proposition that penal statutes must be strictly construed, especially when the penalty may result in a windfall to a plaintiff" and "the proposition that the requirements of a penal statute must be applied in a manner which results in fairness and justice to the parties." *Id.* A fair and balanced consideration of this penal statutory scheme leads us to conclude that an implied request does not satisfy sections 29–3–310 and 320.[4]

■ We hold that section 29–3–310 requires the following elements be established by the mortgagor to trigger the substantial penalty and related relief in section 29–3–320: (1) that he has made full payment of his "debts," including any applicable "damages, costs, and charges"; (2) that he has made a "request by certified mail or other form of delivery"[5] that the mortgage be satisfied of record; (3) that he has made a "tender of fees of office for entering satisfaction"; and (4) that the mortgagee has failed to "enter satisfaction in the proper office on the mortgage" within three months of the request.[6]

---

4. We do not suggest that a mortgagee's conduct is irrelevant in analyzing a mortgagor's compliance with the section 29–3–310 elements. *Kinard* illustrates this point. 319 S.C. at 412–13, 461 S.E.2d at 835 (holding the mortgagor's remittal of fees to the mortgagor's attorney constituted a tender of fees under the statute because the mortgagee agreed to have the attorney record the satisfaction). Thus, there may be situations when a mortgagor may properly rely on the conduct of a mortgage company to support the finding of a request under section 29–3–310. We hold the record before us does not present such a situation.

5. Section 29–3–310 was amended in 1999 to include the requirement that the request be accomplished "by certified mail or other form of delivery with a proof of delivery...."

6. This case, of course, has drawn our attention to the request element. As discussed, the mortgagor must make the request, and under the facts presented, we do not imply a request by the mortgagor from the mortgagee's representations in the "borrower's responsibilities" document. Our holding today should not be construed as foreclosing all

## III.

Because the Dykemans have failed to establish the element of a request under sections 29–3–310 and 320, the trial court properly entered summary judgment for Wells Fargo.

**AFFIRMED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

relief to a mortgagor in this circumstance. When a mortgagee, for valuable consideration, represents that it will perform in a particular manner, and then fails to perform as promised, a traditional action may be available. In such circumstance, a mortgagor may pursue an action by alleging and proving the existence of a duty; breach of that duty; and damages proximately caused by the breach. A claim under sections 29–3–310 and 320 is clearly more appealing to mortgagors with its windfall penalty and accompanying absence of the usual burden of having to prove proximate cause and damages.